IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:07CR76 |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | |
| EDMUND TERRELL DAVIS, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion to suppress filed by defendant Edmund Terrell Davis (Davis) (Filing No. 11). Davis is charged in the Indictment with possession of a firearm after previously being convicted of a felony (Count I) in violation of 18 U.S.C. § 922(g)(1); and the forfeiture of a firearm (Count II) pursuant to 18 U.S.C. § 2641(c).

Davis seeks to suppress evidence obtained as a result of a traffic stop, and the subsequent detention and search by officers of the Omaha Police Department (OPD) on December 27, 2006. Davis filed a brief in support of the motion (Filing No. 12). The United States filed a brief in opposition of the motion (Filing No. 13). Davis argues the initial traffic stop was a violation of the rights afforded to Davis under the Fourth Amendment of the United States Constitution, because the traffic stop was without probable cause. Specifically, Davis contends that although the taillight cover of the 2000 Pontiac Grand Am (Pontiac) in which he rode was broken, the taillight's condition did not violate any traffic law. Therefore, Davis argues, OPD officers had no legal justification for stopping the Pontiac and any evidence derived from the stop and subsequent investigation is inadmissable.

The court held a hearing on the motion on April 27, 2007. Davis was present at the hearing and was represented by Julie B. Hansen, Assistant Federal Public Defender. The United States was represented by Assistant United States Attorney Michael D. Wellman. The court heard testimony of OPD Officer Nathan T. Waller (Officer Waller). The court also heard testimony from Edward D. Davis (Edward Davis), Antoinette M. Davis (Antoinette Davis), Ebony Ashley (Ashley), and Marcus E. Deal (Deal). The court received into evidence photographs of the intersection of North 42nd Street and Boyd Street (Exhibits 101, 102); photographs of the rear tail lights of the 2000 Pontiac Grand Am

involved in the traffic stop (Exhibits 104-106); an aerial photograph of the North 42nd Street and Boyd Street intersection and surrounding neighborhoods (Exhibit 109); copies of the same aerial photographs with markings (Exhibit 109A, 109B, 109D); and a hand-drawn map with vehicle markings of the North 42nd Street and Boyd Street intersection (Exhibit 109C).  A transcript (TR.) of the April 27, 2007 hearing was filed May 3, 2007 (Filing No. 29), at which time the matter was deemed submitted .

## FINDINGS OF FACT

On December 29, 2006, at approximately 8:48 p.m., Officer Waller, a member of the uniform patrol division of OPD since 2004, and his partner, Officer Kalon Fancher (Officer Fancher), patrolled in a marked police car the area near the intersection of the North 42nd Street and Boyd Street in Omaha, Nebraska (TR. 5-7).  Officer Fancher drove the police car, and Officer Waller rode as a passenger (TR. 7).

Also in the vicinity of the North 42nd Street and Boyd Street intersection was a 2000 Pontiac Grand Am (Pontiac), which Edward Davis was driving (TR. 49-51).  In the Pontiac with Edward Davis were three others Edward Davis's uncle, the defendant who is Edward Davis' brother and Deal (TR. 75-76, 78).  Approximately forty-five minutes earlier, all four of the men had smoked marijuana at a friend's house (TR. 72, 85).

Officer Fancher saw the rear driver-side taillight cover of the Pontiac driven by Edward Davis was broken (TR. 7).  Officer Fancher began following the Pontiac and told Officer Waller the taillight of the Pontiac was broken (TR. 7).  While following the Pontiac, Officer Waller told Officer Fancher he also saw the taillight of the Pontiac "was broken and [the taillight] had been replaced with red tape" (TR. 7).  After following the Pontiac for several blocks, Officer Fancher activated the police car's emergency lights and pursued the Pontiac (TR. 8, 70).  The Pontiac continued southbound for approximately two blocks and turned left onto a different street (TR. 8, 70).  The Pontiac then stopped on the side of the street (TR. 71).

When Officers Fancher and Waller approached the Pontiac on foot, the officers smelled the odor of marijuana emanating from the Pontiac (TR. 9-10).  Officer Fancher approached the driver-side of the Pontiac, while Officer Waller approached the passenger

2

side (TR. 11).  Officers Fancher and Waller ordered the four Pontiac occupants to exit the Pontiac (TR. 12).  Upon the passengers' exit, Officers Waller and Fancher found marijuana in Deal's pocket, during a pat-down, and between the driver's seat and center console of the Pontiac, during a search (TR. 38, 76).

Davis, the final occupant in the Pontiac, exited through the rear-passenger door and attempted to run from Officer Waller (TR. 13).  While in the process of subduing Davis, Officer Waller grabbed Davis by his coat and forced Davis to the ground (TR. 14-15).  A previously concealed object fell from Davis's possession (TR. 14-15).  Officer Fancher recovered a handgun lying on the ground near the area where Officer Waller had subdued Davis (TR. 15).

Officers Fancher and Waller arrested Davis (TR 15).  In addition, Officers Fancher and Waller issued a citation to Edward Davis for the broken taillight and the marijuana found in the Pontiac (TR. 38).  Officers Fancher and Waller also issued a citation to Deal for possession of marijuana (TR. 113).  Edward Davis and Deal were not prosecuted on the citations issued (TR. 85, 113).

Ashley testified she purchased in January 2006 the Pontiac (TR. 97, Exhibit 104). Approximately two months after purchasing the Pontiac, Ashley hit a fire hydrant with the Pontiac, which damaged the Pontiac's rear driver-side taillight cover (TR. 97).  The damaged areas of the taillight cover were the bottom quarter of brake light and the turn signal (Exhibits 104-106).  Soon after this occurrence, Ashley's boyfriend, Edward Davis, placed red tape over the broken taillight after a police officer stopped him for operating the Pontiac with a broken taillight (TR. 65).  Edward Davis testified the police officer suggested that if he (Edward Davis) did not have the money to replace the taillight, then he should cover it with red tape (TR. 65).  Edward Davis is nineteen years old and was previously convicted of providing false information to a police officer (TR. 48, 86).  In addition to Edward Davis and Ashley, Antoinette Davis, Davis' mother, also periodically drove the Pontiac while the vehicle had red tape on the taillight cover (TR. 93).

## CONCLUSION OF LAW

Davis argues a police officer does not have probable cause to initiate a traffic stop when, although the taillight cover of a car is broken, the lower quarter of the taillight is covered with red tape. The Eighth Circuit has "repeatedly held that any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." ***United States v. Mallari***, 334 F.3d 765, 766 (8th Cir. 2003) (internal quotation and citations omitted).

"To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." ***United States v. Jones***, 275 F.3d 673, 680 (8th Cir. 2001). An officer has an objectively reasonable basis for stopping a motorist where the officer has a reasonable basis for believing the driver has breached a traffic law. ***Mallari***, 334 F.3d at 766 (**citing *United States v. Thomas***, 93 F.3d 479, 485 (8th Cir. 1996) and ***United States v. Sanders***, 196 F.3d 910, 913 (8th Cir. 1999) (officer's mistaken, but objectively reasonable belief that a traffic violation occurred supported traffic stop)).

The government cites Neb. Rev. Stat. § 60-6,219(6), as the basis for which Officers Fancher and Waller initiated their traffic stop of the Pontiac. The statute provides:

> It shall be unlawful for any owner or operator of any motor vehicle to operate such vehicle upon a highway unless: . . . (b) Each taillight shows red directly to the rear, ***the lens covering each taillight is unbroken***, each taillight is securely fastened, and the electric circuit is free from grounds or shorts.

Neb. Rev. Stat. § 60-6,219(6) (LexisNexis 2006) (emphasis added).

Edward Davis's operation of the Pontiac was a violation of section 60-6,219, because the bottom quarter of the Pontiac's taillight cover was broken. While driving the police car, Officer Fancher noted the taillight of the Pontiac as broken. Officer Waller testified he saw the broken taillight of the Pontiac, after the police car began following the Pontiac. Officers Fancher and Waller had an objectively reasonable belief that Edward Davis had violated section 60-6,219 through his operation of the Pontiac with its broken taillight cover.

Davis failed to provide any evidence that the taillight cover of the Pontiac was unbroken. Witnesses Edward Davis, Antoinette Davis, and Ashley testified the taillight of the Pontiac had sustained damage and was covered with red tape (TR. 65, 93, 97). Exhibits 104, 105, and 106 reveal the lower quarter of the Pontiac's taillight covering was broken. Edward Davis's traffic violation of operating a motor vehicle with a broken taillight lens gave Officers Fancher and Waller probable cause to stop the Pontiac.

Even if, *arguendo*, the condition of the Pontiac's taillight was not a *per se* violation of section 60-6,219, Officers Fancher and Waller still had probable cause to stop the Pontiac. The Eighth Circuit has held a police officer is justified in making a traffic stop, so long as the officer had an objectively reasonable belief that a traffic violation occurred. *Sanders*, 196 F.3d at 913. In *Sanders*, a South Dakota highway patrolman stopped a pickup truck, which was towing a trailer, because one of the two taillights on the trailer was missing a red lens and was emitting white light from the exposed bulb. *Id*. at 912. The defendant (Sanders) sought to suppress the evidence by asserting the trailer's taillight condition did not constitute a violation of South Dakota law. *Id*. South Dakota traffic law provided:

> Every motor vehicle . . . shall be equipped with at least two tail lamps mounted on the rear, which . . . shall emit red light plainly visible. . . . However, motor vehicles . . . manufactured and assembled prior to July 1, 1973, shall have one tail lamp mounted on the left side of the rear which when lighted . . . shall emit red light plainly visible. . . .

S.D. Codified Laws § 32-17-8 (1998). Sanders argued that because the trailer involved in the traffic stop was manufactured before 1973, the operation of the trailer did not violate § 32-17-8, as the trailer had one functioning taillight. *Sanders*, 196 F.3d at 913.

In response to this argument, the Court of Appeals for the Eighth Circuit wrote:

> "We find it unnecessary to parse the words of the South Dakota statute in determining whether [the highway patrolman] had probable cause to stop the vehicle. Regardless of whether or not the trailer actually was in violation of the South Dakota statute, [the highway patrolman] was justified in making the stop if he objectively had a reasonable basis for believing that the driver has breached a traffic law. Even if the trailer was not technically in violation of the statute, [the highway

5

> patrolman] could have reasonably believed that the trailer violated the statute because one light was missing a red lens or because he believed that the trailer was manufactured after 1973.  The determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time. . . . [G]iven the apparent attempt to have two functioning taillights on the trailer, [the highway patrolman] could have reasonably believed at the time that the trailer was subject to the two taillight requirement. . . . [T]his Court should not expect state highway patrolmen to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney. . . . Even if [the highway patrolman] was wrong, we cannot say that his belief was unreasonable.

*Id*. (internal citations omitted).  Therefore, a police officer may have probable cause to conduct a traffic stop, even if the basis for the traffic stop is a mistaken, yet reasonable, interpretation of the traffic laws.  *Id*.  A police officer must have an objective and reasonable belief that a traffic law violation has occurred in order to have probable cause to conduct for a traffic stop.  *Id*.

Like in ***Sanders***, Officers Fancher and Waller initiated the traffic stop of the Pontiac because they believed the operation of the Pontiac constituted a violation of state traffic law.  Officers Fancher and Waller had an objectively reasonable belief that the Pontiac violated Neb. Rev. Stat. § 60-6,219.  Even if Officers Fancher and Waller erred in identifying Edward Davis's operation fo the Pontiac as illegal because of the taillight, the officers' objectively reasonable belief that the taillight's condition constituted a violation of a Nebraska traffic law gave the officers probable cause to stop the Pontiac.

Davis failed to *explicitly* state any alternative, impermissible justification for why Officers Fancher and Waller began to follow the Pontiac.  Davis failed to provide any *explicit* evidence to contradict Officer Waller's testimony that the motive for the stop was something other than the taillight's condition.  Davis's attorney attempted to undermine the credibility of Officer Waller by seeking to demonstrate Officer Waller did not accurately recall the route that the police car followed the Pontiac through the streets of Omaha (TR. 16-29).  Although Officer Waller's recollection of where he and Officer Fancher followed

6

the Pontiac may be inaccurate, this information is irrelevant for determining *why* Officers Fancher and Waller began pursuing the Pontiac.

When an officer makes a routine traffic stop, "the officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." ***United States v. McCoy***, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam). "If the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions." ***United States v. Ward***, 484 F.3d 1059, 1061 (8th Cir. 2007) (**quoting *United States v. Johnson***, 58 F.3d 356, 357 (8th Cir. 1995)).

Officers Fancher and Waller had probable cause to stop the Pontiac for the broken taillight, which initially entitled the officers to conduct an investigation related to the taillight. Edward Davis did not stop the Pontiac immediately upon Officer Fancher's activation of the police vehicle's emergency lights. Additionally, Officers Fancher and Waller smelled marijuana emitting from the Pontiac upon their subsequent approach on foot. These circumstances gave cause to Officers Fancher and Waller to expand the scope of their investigation of the Pontiac beyond the condition of the Pontiac's taillight. Hence, Officers Fancher and Waller ordered the Pontiac's occupants to exit the Pontiac. This order resulted in the discovery of the marijuana in the Pontiac and in Deal's pocket. The order to exit also resulted in Davis's subsequent attempt to flee from Officers Fancher and Waller, which led to Officer Waller subduing Davis, and in turn, Officer Fancher's discovery of a handgun.

All of the evidence collected from the December 29 traffic stop was the result of a valid traffic stop. Thus, the evidence asserted to be suppressed as the fruit of an illegal search should not be suppressed under ***Wong Sun v. United States***, 371 U.S. 471 (1963). Officers Fancher and Waller did not violate Davis's rights under the Fourth Amendment to the United States Constitution. Therefore, the motion to suppress the evidence collected as a result of the December 29 traffic stop should be denied. Upon consideration,

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Davis's motion to suppress (Filing No. 11) be denied in its entirety.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 1st day of June, 2007.

BY THE COURT:

 s/ Thomas D. Thalken
United States Magistrate Judge